# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF NORTH CAROLINA
# DURHAM DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>              Plaintiff,<br><br>              v.<br><br>GREG E. LINDBERG, CHRISTOPHER HERWIG, and STANDARD ADVISORY SERVICES LIMITED,<br><br>              Defendants. | Case No. 22-cv-715<br><br>Honorable Catherine C. Eagles<br>Magistrate Judge Joi Elizabeth Peake |

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION'S
REPLY IN SUPPORT OF ITS MOTION TO COMPEL
DEFENDANT LINDBERG TO COMPLETE ANSWERS
TO ITS FIRST AND SECOND SETS OF INTERROGATORIES**

      Lindberg wants to have his cake and eat it, too. He claims that the $57 million he diverted from the NC Insurance Companies to AFA — an entity he owned and controlled — through the SPV-to-FinCo Conversions was repaid in full, but he won't say to whom, what, when, where, or how. Although Lindberg does not deny that AFA received the $57 million dollars, he professes not to know any details about how the money was repaid. But he is unwilling to say so under oath. The Federal Rules do not afford Lindberg that luxury.

      Lindberg now claims that his "*understanding*" of the "*aim and goal* of these [SPV-to-FinCo Conversion] transactions" is that "the funds would be paid back to

GBIG as 'additional paid in capital.'" (Lindberg Resp. at 4 (emphasis added), Dkt. No. 83.) This is more than Lindberg said at his deposition of over six hours, where he repeatedly claimed that AFA paid back all of the money, but professed not to know how the funds were repaid. But never mind. If Lindberg truly does not know any details about what AFA did with the $57 million he diverted from the NC Insurance Companies, Lindberg simply needs to state that under oath in verified interrogatory responses. This he refuses to do, and therein lies the parties' dispute.

Lindberg misapprehends the SEC's motion and his obligations under the Federal Rules. To be clear, the SEC does not *need* Lindberg to do the SEC's work or trace the $57 million Lindberg misappropriated if he doesn't know where it went. The SEC is fully aware of what the bank records show. Instead, the SEC's interrogatories ask Lindberg to identify what *he knows personally* of these facts. If Lindberg doesn't know much, he can just say so under oath. That is all the SEC is asking; and it's what the Federal Rules require. Yet Lindberg refuses to state under oath that he does not know exactly how the funds were purportedly repaid.

Lindberg is trying to paint the picture that he was just an uninformed, uninvolved, and unaware executive at the helm of a consortium of companies, operating at a distance of over 50,000 feet. Lindberg fails to tell this Court the full story. Truth be told, nearly all of the witnesses in this case have testified just the opposite. Contrary to Lindberg's assertions:

- Lindberg and his team at Eli Global, including Christopher Herwig, Devin Solow, and others, handled all investments for the NC Insurance Companies, telling GBIG executives that they were

2

Case 1:22-cv-00715-CCE-JEP   Document 92   Filed 09/17/24   Page 2 of 9

- responsible for the liabilities (running the operations of the insurance companies), while Eli Global controlled the assets (including the selection of all investments).

- Lindberg was intimately involved in every aspect of the SPV-to-FinCo Conversions, from their inception, structure, approval, and generation of profits to AFA, a company he controlled and used to fund other Lindberg-affiliated entities.

- Herwig and Solow acted at Lindberg's direction and no investment would go forward without Lindberg's approval.

- GBIG executives also followed the direction of Lindberg and Herwig, who were directors of the NC Insurance Companies and on the investment committee.

- No document or witness testimony has ever stated that the "aim and goal" of the SPV-to-FinCo Conversions was to return the $57 million paid to AFA back to GBIG as additional paid in capital.

- In connection with the parallel criminal proceedings, Herwig and Solow have each admitted (at a guilty plea and in connection with a deferred prosecution agreement, respectively) that they engaged in a criminal conspiracy with Lindberg to defraud the NC Insurance Companies through the SPV-to-FinCo Conversions, among other things.[1]

(*See* Herwig Dep. Tr. 23, 41, 62-63, 74-75, 79, 84-85, 95, 240-241, 259 (Ex. A); Solow Dep. Tr. 255-257, 310, 314, 323-324, 326, 330-31, 347, 353, 366-67, 380-381, 401-402, 416-417 (Ex. B.); Hensley Dep. Tr. 27, 78, 84-85, 189-190, 191-196, 198-200,

---

[1] Lindberg's attempt to point the finger at Thomas Norton is disingenuous. Norton is Lindberg's long-time tax accountant and bookkeeper who had *no* prior experience as a trustee. Lindberg installed him as the trustee for more than 61 Lindberg-affiliated trusts that contained more than 150 different Lindberg-affiliated LLCs (including AFA). Norton did not know what AFA did or how it used its money. He did not select the investments, control them, or make any of the investment decisions for the trusts or the LLCs. Finally, the trusts did not have bank accounts and Norton had no access to or control over the LLCs' bank accounts (including AFA's).

3

202-204, 230-231, 238-239, 242-244 (Ex. C); Stewart Dep. Tr. 193-195, 199-200, 203-205, 225, 296-300, 321-322 (Ex. D), Declaration of Alyssa Qualls, filed contemporaneously herewith); *see also United States v. Herwig,* 3:22-cr-314 (M.D.N.C.) (Dkt. Nos. 3, 6, 19); *United States v. Solow*, No. 3:22-cr-315 (M.D.N.C.) (Dkt. Nos. 3, 6-1).

It is high time for Lindberg to put his cards on the table. Lindberg cannot continue to claim that he *knows* all of the funds diverted to AFA were repaid, without providing the specific details of his knowledge, or lack thereof, expressly, in writing — and under oath.[2]

### This Court Should Compel Lindberg to Answer the SEC's Interrogatories "Fully," as the Federal Rules Require.

The gist of Lindberg's response is that he doesn't know any details about the flow of funds from AFA back to GBIG as paid in capital. Lindberg claims that he answered the SEC's interrogatories based on "his personal knowledge," "as AFA's manager," and that he should not be required to do more. (Lindberg Resp. at 2, 10-12, Dkt. No. 83.) Lindberg claims that his "Responses reflect his understanding of the transactions from a high level," and that he was not "personally tracking the movement of AFA's funds." (*Id.* at 11-12.)

If Lindberg truly doesn't know anything else, then he needs to say so in his interrogatory responses — in writing, under oath. As things stand, Lindberg is trying

---

[2] After the SEC filed the instant motion, Lindberg supplemented his interrogatory responses yet again, but they do not materially amend the responses that are the subject of this motion.

4

to leave himself too much wiggle-room. Lindberg did not respond to the SEC's interrogatories by stating that he does not know the answers to the SEC's direct questions. Rather, for four of the five interrogatories at issue here, he refused to answer altogether and directed the SEC to voluminous bank records and forthcoming expert discovery. (Lindberg's Second Amended Responses to SEC's First Set of Interrogatories, No. 8; Lindberg's First Amended Responses to SEC's Second Set of Interrogatories, Nos. 5-7.) And for the fifth interrogatory, Lindberg vaguely describes a purported November 2017 transfer to GBIG as paid in capital, but provides no details, without saying he does not know more. (Lindberg's Second Amended Responses to SEC's First Set of Interrogatories, No. 7.) But those responses beg the question: What *facts* are within *Lindberg's current personal knowledge*, not the knowledge of bank records and/or experts witnesses?

Lindberg also argues that the SEC should pursue answers to its interrogatories through expert discovery. (Lindberg Resp. at 2, 7-8, Dkt. No. 83.) However, the SEC's interrogatories seek *Lindberg's personal knowledge* of what AFA did with the $57 million it obtained from the SPV-to-FinCo Conversions. No expert can opine on Lindberg's knowledge.

This Court should issue a simple ruling. If Lindberg knows how AFA used the $57 million he diverted from the SPV-to-FinCo Conversions, then he needs to disclose his knowledge "fully," as required by the Federal Rules. *See* Fed. R. Civ. P. 33(d). If Lindberg does not know what AFA did with the money, then he needs to say so expressly, under oath. It is not good enough for Lindberg to suggest in a legal

5

brief — a document not signed by him, and a document not under oath — that he does not know anything else.[3]

## CONCLUSION

Lindberg should not be allowed to claim that he *knows* AFA repaid the money, without disclosing the specific details of the repayments. This Court should order Lindberg to answer the SEC's First and Second Set of Interrogatories (Nos. 7-8 in the First Set and Nos. 5-7 in the Second Set) in full. If Lindberg does not know, then he needs to say so expressly, in writing, and under oath.

## BRIEF CERTIFICATION

Pursuant to Local Rule 7.3(d), the SEC certifies that this brief contains 1,437 words, excluding the caption, signature lines, and certificate of service.

---

[3] This Court also should order Lindberg to disclose what he knows, without merely citing pages of prior testimony. *See, e.g.*, *Fint v. Brayman Constr. Corp.*, No. 5:17-CV-04043, 2018 WL 5116097, at *2 (S.D.W. Va. Oct. 19, 2018) ("[A]n answer to an interrogatory [generally] should not refer to other documents such as pleadings, depositions, or other interrogatories. The answer should be complete in itself.") (granting defendant's motion to compel where plaintiff's response referred to deposition testimony, among other things).

6

Dated:  September 17, 2024                Respectfully submitted,

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**

By:  /s/ Alyssa A. Qualls

Alyssa A. Qualls (quallsa@sec.gov)
Kevin A. Wisniewski (wisniewskik@sec.gov)

United States Securities and
Exchange Commission
Chicago Regional Office
175 West Jackson Boulevard, Suite 1450
Chicago, Illinois  60604
(312) 353-7390

# CERTIFICATE OF SERVICE

I hereby certify that I provided service of the foregoing document, via ECF filing, to all counsel of record on September 17, 2024.

                                                                /s/ Alyssa A. Qualls

**Gregory E. Lindberg**
Alisson Mullins
L. Cooper Harrell
Turning Point Litigation Mullins Duncan Harrell & Russell PLLC
300 North Greene Street, Suite 2000
Greensboro, NC 27401
amullins@turningpointlit.com
charrell@turningpointlit.com

Ryan J. Meyer
Barrett R. Howell
Katten Muchin Rosenman LLP
2121 N. Pearl Street, Suite 1100
Dallas, TX 75201
Ryan.Meyer@katten.com
Barrett.Howell@katten.com

Michael J. Diver
Shannon Gross
Katten Muchin Rosenman LLP
525 W. Monroe Street
Chicago, IL 60661
Michael.Diver@katten.com
Shannon.Gross@katten.com

*Attorneys for Defendant Gregory E. Lindberg*

**Christopher Herwig**
Claire Rauscher
Womble Bond Dickinson (US) LLP
One Wells Fargo Center, Suite 3500
301 South College Street
Charlotte, NC 28202
Claire.Rauscher@wbd-us.com

Britt Biles
Womble Bond Dickinson (US) LLP
2001 K Street, NW, Suite 400 South
Washington, DC 20006
Britt.Biles@wbd-us.com

*Counsel for Defendant Christopher Herwig*

**Standard Advisory Services Limited**

Mark A. Jones
Alan M. Ruley
Bell Davis & Pitt, P.A.
POB 21029
Winston-Salem, NC 27120
mjones@belldavispitt.com
aruley@belldavidpitt.com

*Attorneys for Defendant*
*Standard Advisory Services Limited*